UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OHIO CASUALTY INSURANCE COMPANY,
Plaintiff,

-v-

NEW STYLE CONTRACTORS, INC., *et al.*,
Defendants.

26-CV-2686 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Ohio Casualty Insurance Company ("OCIC") brings this action against Defendants New Style Contractors, Inc. ("New Style"), NSC Associates Corp. ("NSC"), and Artur and Barbara Nowak (collectively, the "Nowaks") for breach of contract and specific performance. (*See* ECF No. 2.) Before the Court are OCIC's motions for default judgment against New Style and NSC and for summary judgment against the Nowaks, who are proceeding *pro se*, as well as the Nowaks' motion for an order to show cause why the action should not be dismissed and the Nowaks' motion for a stay of all proceedings at law. (ECF Nos. 27, 29, 37, 48.) For the reasons that follow, the Court grants OCIC's motions for default judgment and summary judgment and denies the Nowaks' motions.

## I. Background

### A. Factual Background

Local Civil Rule 56.1 requires parties moving for summary judgment to attach "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried"—often referred to as a "Rule 56.1 Statement"—to their motions. L. Civ. R. 56.1(a). OCIC has filed such a Rule 56.1

Statement (ECF No. 29-10 (“Pl. 56.1 Statement”)) and has submitted evidence in support of its Rule 56.1 Statement.

Local Civil Rule 56.1 also requires the nonmovant to a summary judgment motion, here the Nowaks, to file a statement with “correspondingly numbered paragraph[s] . . . responding to[] each numbered paragraph in the statement of the moving party.” L. Civ. R. 56.1(b). “Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.” L. Civ. R. 56.1(c). Any statement by the opponent denying any statement of material fact must be followed by citation to admissible evidence. L. Civ. R. 56.1(d).

The Nowaks have not filed a Rule 56.1 counter-statement. Nor do they, in their briefing, cite admissible evidence in the record in support of any purported genuine disputes of material fact. “While *pro se* litigants are not excused from meeting the requirements of Local Rule 56.1[,] where a *pro se* [litigant] fails to submit a proper Rule 56.1 Statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the [litigant’s] arguments, *where actually supported by evidentiary submissions*.” *Brown v. Phipps*, No. 19-CV-04356, 2021 WL 3604664, at *1 n.3 (S.D.N.Y. Aug. 12, 2021) (cleaned up and emphasis added). However, the Nowaks have not filed any evidentiary submissions and do not cite any evidence in the record in support of their objections to OCIC’s Rule 56.1 Statement. Accordingly, the Court considers the facts contained in OCIC’s Rule 56.1 Statement to be undisputed and adopts them to the extent they are supported by evidence in the record.

OCIC is a subsidiary of Liberty Mutual Insurance Company that is organized under the laws of New Hampshire with a principal place of business in Massachusetts. (Pl.'s 56.1 Statement ¶ 1; ECF No. 29-1 ¶ 4.) New Style and NSC are New York corporations with their principal places of business in New York. (ECF No. 29-1 ¶¶ 5-6.) The Nowaks are individuals who reside in New Jersey. (Pl.'s 56.1 Statement ¶¶ 2-3.)

On or about August 8, 2017, New Style, NSC, and the Nowaks (the "Indemnitors") entered into the "General Agreement of Indemnity" (the "Indemnity Agreement") with OCIC. (*Id.* ¶ 4; *see also* ECF No. 29-2 ("Agmt.").) Pursuant to the Indemnity Agreement, the Indemnitors agreed to "exonerate, hold harmless, indemnify, and keep [OCIC] indemnified from all liability for Loss," which is defined as "any loss," including counsel fees, "which [OCIC] may sustain or incur or otherwise determine to pay in its sole and absolute discretion, by reason of: (a) a request for a Bond; (b) execution or procurement of a Bond, including any cost incurred by [OCIC] in fulfilling its obligations under any Bond; (c) the failure of Indemnitors to comply with any covenants or conditions of this Agreement or Other Agreement; or (d) in enforcing any of the covenants and conditions of this Agreement or Other Agreements." (Agmt. §§ 1, 4.) The Indemnity Agreement further provides that the Indemnitors shall pay OCIC for Loss "promptly upon demand," and that:

> If [OCIC] makes any Loss payment, Indemnitors agree that in any accounting between . . . [OCIC] and Indemnitors, . . . [OCIC] is entitled to recover from Indemnitors all disbursements made by it in good faith under the belief that it is or was or might be liable for the sums and amounts disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed.

(*Id.* § 4.) The Indemnity Agreement goes on to provide "that the vouchers or other evidence of any such payments made by Surety shall be prima facie evidence of the fact and amount of the liability to [OCIC]." (*Id.*)

A separate provision of the Indemnity Agreement allows OCIC to demand Indemnitors to deposit "collateral security of a type and value satisfactory to [OCIC]" to cover a potential Loss or default, and it provides a list of property that the Indemnitors assign to OCIC as collateral security. (*Id.* §§ 5-6.) The Indemnity Agreement provides for joint and several liability. (*Id.* § 19.)

On or around December 18, 2018, New Style entered into a construction contract for work at Queensborough Community College. (Pl.'s 56.1 Statement ¶ 8.) OCIC was obligated to provide construction surety bonding and entered into a payment and performance surety bond with New Style for the amount of $10,824,000 (the "Queensborough CC Bond"). (*Id.* ¶¶ 8-9; ECF No. 29-3.) After issuance of the Queensborough CC Bond, OCIC received various Bond claims alleging that New Style failed to properly perform its payment and performance obligations. (Pl.'s 56.1 Statement ¶ 10.)

On or about February 26, 2018, New Style entered into a construction contract for work on Baskerville Hall at the City College of New York. (*Id.* ¶ 11.) Again, OCIC was obligated to provide construction surety bonding and entered into a payment and performance surety bond with New Style, this time for the amount of $4,924,000 (the "Baskerville Hall Bond"). (*Id.* ¶¶ 11-12; ECF No. 29-4.) After issuance of the Baskerville Hall Bond, OCIC received various Bond claims alleging that New Style failed to properly perform its payment and performance obligations. (Pl.'s 56.1 Statement ¶ 13.)

Lastly, on or about August 14, 2018, New Style entered into a construction contract for work on the Marshak[1] lecture rooms and bathrooms. (*Id.* ¶ 14.) Once again, OCIC was

[1] Although the Rule 56.1 Statement identifies the project as the "Marshall" Project, the corresponding surety bond execution report indicates that it was in fact for the "Marshak" Lecture Rooms, which are associated with the City College of New York. (ECF No. 29-5 at 2.)

obligated to provide construction surety bonding and entered into a payment and performance surety bond with New Style, this time for the amount of $4,074,000 in (the "Marshak Bond"). (*Id.* ¶¶ 14-15; ECF No. 29-5.) After issuance of the Marshak Bond, OCIC received various Bond claims alleging that New Style failed to properly perform its payment and performance obligations. (Pl.'s 56.1 Statement ¶ 16.)

The Bond claims that OCIC has received are the result of New Style's failure to perform its obligations pursuant to the bonded contract for each of the above three projects. (*Id.* ¶ 17.) In light of the Bond claims, OCIC retained an attorney. (*Id.* ¶ 18.) Upon due investigation, and upon the good faith belief that certain Bond claims were valid, OCIC has incurred and continues to incur loss and expense. (*Id.* ¶ 19.) OCIC has incurred attorney's fees as a result of fulfilling its obligations pursuant to the Bond. (*Id.* ¶ 21.) Indeed, OCIC provides a "Loss Run" spreadsheet indicating that Losses total $3,142,358.00 exclusive of interest, costs, and attorney's fees associated with this lawsuit. (ECF No. 29-6 at 4.) OCIC has also submitted an attorney affidavit indicating that attorney's fees and costs associated with this lawsuit total $14,246.41. (ECF No. 29-7 ¶ 7.) Moreover, despite due demand, the Nowaks have failed to post collateral security or indemnify OCIC. (Pl.'s 56.1 Statement ¶ 20.)

### B. Procedural Background

OCIC commenced this action on April 1, 2026. (ECF No. 1.) The Nowaks were served on April 7, 2026 (ECF No. 7), NSC was served on April 8, 2026 (ECF No. 8), and New Style was served on April 13, 2026 (ECF No. 9). On April 23, 2026, the Nowaks filed a "Notice of Abatement and Objection to Proceeding." (ECF No. 12.) The Nowaks also filed a "Notice of Equitable Title, Beneficial Interest, Priority of Claim, and Demand for Disclosure." (ECF No. 15.) The Court held a telephonic conference on July 9, 2026 (*see* ECF No. 17), at which the

Nowaks appeared and repeatedly stated that they objected to the jurisdiction of the Court. Neither New Style nor NSC appeared at the conference.

On July 22, 2026, OCIC obtained a clerk's certificate of default as to New Style and NSC. (ECF Nos. 25, 26.) On July 23, 2026, OCIC filed a motion for default judgment against New Style and NSC (ECF No. 27), along with proof of service of that motion and its supporting papers on those Defendants (ECF No. 28). OCIC filed a motion for summary judgment against the Nowaks that same day (ECF No. 29), along with a supporting memorandum of law (ECF No. 29-12 ("Mem.")), a Rule 56.1 Statement (Pl.'s 56.1 Statement), and various supporting exhibits. On July 31, 2026, the Nowaks filed an opposition to OCIC's motion for summary judgment. (ECF No. 32 ("First Opp.").) On August 6, 2026, the Nowaks filed a second opposition raising largely the same objections. (ECF No. 35 ("Second Opp.").) The Nowaks also filed a "Notice of Order to Show Cause Why Plaintiff's Claims Should Not be Dismissed" (the "Notice"). (ECF No. 37.) On August 12, 2026, OCIC filed a reply in further support of its motion for summary judgment. (ECF No. 36 ("Reply").) On August 20, OCIC filed an opposition to the Notice. (ECF No. 38.) On September 2, the Nowaks filed a "Comprehensive Bill in Equity for an Equitable Setoff, Accounting, Exoneration, and Injunctive Relief." (ECF No. 45.) On September 18, the Nowaks filed a document entitled "Notice of Priority Interest. Notice of Subrogation. Notice of Tender – Special Deposit. Notice of Appointment," which purports to deposit three bonds with the Court and, through those bonds, settle all claims against them. (ECF No. 46.) On October 16, the Nowaks filed a "Notice of Exoneration, Equitable Conversion, Reimbursement, Restitution, Settlement and Closure" reaffirming their belief that those bonds had settled this litigation. (ECF No. 47.) On October 17, the Nowaks filed a "Statement of Equitable Controversy and Material Injuries" asking this Court to stay this action

until it resolves their "co-equal, preexisting rights *in equity* over" the subject of this action. (ECF No. 48.) On October 20, OCIC filed a letter indicating that the Nowaks had not actually deposited any money or bonds with the Court. (ECF No. 49.) To date, New Style and NSC have not responded to any of OCIC's filings or entered an appearance on the docket.

## II. Legal Standards

### A. Summary Judgment

A movant is entitled to summary judgment only if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 251 (S.D.N.Y. 2021) (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016)). In resolving a summary judgment motion, the Court "is required to view the record in the light most favorable to the party against which summary judgment is contemplated and to resolve all ambiguities and draw all factual inferences in favor of that party." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008).

The moving party has the initial burden of demonstrating that "no genuine issue of material fact exists." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). That said, "the party opposing summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Chichinadze*, 517 F. Supp. 3d at 251 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Rather, the non-moving party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41

(2d Cir. 2006)) (other quotation marks omitted). "[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996). "[T]o survive a summary judgment motion, the opposing party must establish a genuine issue of fact by 'citing to particular parts of materials in the record.'" *Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468, 482 (S.D.N.Y. 2024) (quoting Fed. R. Civ. P. 56(c)(1)(A)).

"In considering a dispositive motion brought or defended by a *pro se* litigant, the Court must 'liberally construe' the *pro se* party's pleadings in his favor and hold him to 'less stringent standards than formal pleadings drafted by lawyers.'" *McFarlane v. Harry's Nurses Registry*, No. 17-CV-6350, 2020 WL 1643781, at *4 (E.D.N.Y. Apr. 2, 2020) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980)). "Nonetheless, '[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence [] are insufficient to overcome a motion for summary judgment.'" *Id.* (quoting *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002)).

**B. Default Judgment**

A party "against whom judgment for affirmative relief is sought" is in default when it "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). As a "default is an admission of all well-pleaded allegations against the defaulting party . . . a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014) (quotation marks omitted). Still, a district court must "determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." *Id.* (alterations adopted) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). "To determine whether the plaintiff's allegations are well pleaded for purposes of a default judgment, the Court applies the

same standards that govern a motion to dismiss under Rule 12(b)(6)." *Cala v. Buena Vista Tortillas Corp.*, No. 21-CV-6890, 2023 WL 2574746, at *2 (S.D.N.Y. Mar. 20, 2023) (cleaned up).

## III. Discussion

### A. Jurisdiction, Standing, and Real Party in Interest

The Nowaks primarily argue that there are defects in subject matter jurisdiction, personal jurisdiction, standing, and OCIC's real-party-in-interest status. (*See, e.g.*, First Opp. at 2; Second Opp. at 4-6.) These arguments fail.

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, which provides that all federal district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Section 1332(c)(1) further provides that "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

OCIC provides evidence that it is a citizen of New Hampshire and Massachusetts, that the Nowaks are citizens of New Jersey, and that NSC and New Style are citizens of New York. (Pl.'s 56.1 Statement ¶¶ 1-3; ECF No. 29-1 ¶¶ 4-8.) OCIC also provides evidence that it seeks damages well over the sum of $75,000. (Pl.'s 56.1 Statement ¶ 22.) The Nowaks do not dispute any of these facts, let alone marshal evidence to the contrary. They instead merely insist that OCIC must establish "the constitutional and statutory basis upon which this Court exercises subject matter jurisdiction over each claim asserted." (Second Opp. at 4.) OCIC has done so here, as federal subject matter jurisdiction over a case is proper when the requirements laid out in § 1332 are satisfied. *See, e.g.*, *Obstfeld v. Schwartz*, 621 F. Supp. 2d 87, 93 (S.D.N.Y. 2008).

OCIC has also demonstrated that personal jurisdiction is proper. "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). Such clauses are upheld if the existence of the clause was reasonably communicated to the parties, unless the clause was obtained through fraud or overreaching or it is clearly shown that enforcement would be unreasonable or unjust. *Id.* Here, the Indemnity Agreement provides that "Indemnitors consent to the general jurisdiction of any . . . Federal court of the United States . . . and waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction." (Agmt. § 23.) The Nowaks do not argue that this forum-selection clause was not reasonably communicated to them—nor can they, as it is plainly contained in the Indemnity Agreement that they signed. *Cf. D.H. Blair & Co.*, 462 F.3d at 103. Nor do they suggest that the clause was obtained through fraud or overreaching, or that enforcement would be unreasonable or unjust.

In any event, personal jurisdiction is also appropriate here even if the Nowaks had not consented. "In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state, here, New York's Civil Practice Law and Rules ('N.Y.C.P.L.R.') section 302, New York's long-arm statute, so long as the district court's exercise of jurisdiction comports with the requirements of due process." *Id.* at 104 (citations omitted). "N.Y. C.P.L.R. § 302(a)(1) permits a court to exercise personal jurisdiction over an out-of-state party if that party transacts any business within the state and if the claim arises from these business contacts." *Id.* (quotation marks omitted). "To meet the transacting business element under N.Y. C.P.L.R. § 302(a)(1), it must be shown that a party purposely availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *Id.* (cleaned up).

Here, the Nowaks signed the Indemnity Agreement for projects that took place in New York, executed surety bonds for those projects, and failed to properly complete those projects, giving rise to OCIC's claims. (Pl.'s 56.1 Statement ¶¶ 8-16; ECF Nos. 29-3, 29-4, 29-5.) This satisfies the requirements of N.Y. C.P.L.R. § 302(a) and due process. *Accord D.H. Blair & Co.*, 462 F.3d at 105 (holding that the requirements of personal jurisdiction were satisfied where defendants had entered into an agreement and executed numerous trades through a New York office on various New York exchanges). OCIC also properly served the Nowaks at their residence. (ECF No. 7.) Again, the Nowaks do not actually raise a basis for finding that personal jurisdiction is improper, instead arguing only that OCIC is required to establish on the record that personal jurisdiction is appropriate and that service of process was lawfully effected. (Second Opp. at 5.) OCIC has met its burden.

The Nowaks also raise conclusory and speculative challenges to whether OCIC has standing and is the real party in interest. (*See* First Opp. at 2; Second Opp. at 2.) On this record, OCIC clearly has standing and is the real party in interest. OCIC has demonstrated that it entered into the Indemnity Agreement with the Nowaks, which obligated the Nowaks to cover any "Loss" that OCIC incurred by reason of execution of a bond, the Nowaks' failure to comply with the Indemnity Agreement, or by enforcing any of the conditions of the Indemnity Agreement. (Agmt. §§ 1, 4.) OCIC has further demonstrated that it entered into three surety bonds with New Style, that it received bond claims as a result of New Style's failure to properly perform its obligations pursuant to the bonded contracts, and that it has suffered subsequent damages, including attorney's fees and expenses. (Pl.'s 56.1 Statement ¶¶ 4, 8-16, 18, 21-22.) Because OCIC is a party to the contracts at issue and has demonstrated a concrete injury resulting from the Nowaks' purported breach of the Indemnity Agreement, it has standing to

bring this case. *See Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-CV-7840, 2020 WL 5751195, at *14 (S.D.N.Y. Sep. 25, 2020) ("It is axiomatic that parties to a contract have standing to enforce its terms and, specifically, to sue for breach of contract." (quotation marks omitted)). Likewise, because OCIC is a party to the Indemnity Agreement, it possesses the right to enforce the breach of contract claim and has a significant interest in the litigation. *Cf. Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 48 n.7 (2d Cir. 2005).

The Nowaks seem to argue that OCIC cannot demonstrate its real-party-in-interest status without providing "the complete chain of title and ownership of every right it seeks to enforce." (Second Opp. at 2.) But the undisputed record demonstrates that OCIC holds the contractual right to indemnification and it contains no suggestion that OCIC ever assigned away that right; indeed, the Nowaks offer no suggestion that it has. Here, the relevant facts are undisputed, and the Nowaks have not offered any evidence to create a genuine dispute as to OCIC's standing or real-party-in-interest status. *Accord Dale v. Suffern Cent. Sch. Dist.*, No. 18-CV-4432, 2023 WL 6386808, at *10 (S.D.N.Y. Sep. 28, 2023) ("A party cannot overcome summary judgment by relying on 'mere speculation or conjecture as to the true nature of the facts.'" (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010))).

**B. Summary Judgment**

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). "Summary judgment is appropriate if the terms of the contract are unambiguous." *Id.*

OCIC has submitted evidence of an agreement between it and the Nowaks, its own adequate performance, breach by the Nowaks, and damages. (*See* Agmt.; Pl.'s 56.1 Statement

¶¶ 8-16, 20; ECF Nos. 29-6, 29-7.) The Indemnity Agreement between OCIC and the Nowaks unambiguously provides that the Nowaks agreed to indemnify OCIC for all losses that OCIC incurred related to the execution, breach, or enforcement of a bond. (Agmt. §§ 1, 4.) The Indemnity Agreement requires the Nowaks to pay OCIC for Loss promptly upon demand and, in the event that OCIC makes any Loss payment, provides that OCIC is entitled to recover from the Nowaks all disbursements made by it in good faith under the belief that it is, was, or might be liable for the sums disbursed. (*Id.* § 4.) New York courts interpret such provisions to entitle sureties "to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount." *Frontier Ins. Co. v. Renewal Arts Contracting Corp.*, 784 N.Y.S.2d 698, 700 (3d Dep't 2004). "New York courts have equated bad faith with fraud or collusion." *Liberty Mut. Ins. Co. v. Biltmore Gen. Contractors, Inc.*, No. 21-CV-5130, 2023 WL 5350813, at *4 (E.D.N.Y. Aug. 21, 2023) (cleaned up).

OCIC provides evidence that it entered into three payment and performance surety bonds with New Style, that it then received various bond claims resulting from New Style's failure to perform its obligations, and that upon investigation and the hiring of an attorney, OCIC incurred loss and expense upon the good faith belief that certain bond claims were valid. (*See* ECF No. 29-1 ¶¶ 14-28.) OCIC further provides evidence that the Indemnitors have failed to post collateral security or indemnify OCIC, and that OCIC has incurred damages totaling $3,142.358.00, exclusive of interest and attorney's fees and costs associated with this lawsuit. (Pl.'s 56.1 Statement ¶¶ 20-22.)

The Nowaks seem to contend that there are factual disputes (First Opp. at 12-14; Second Opp. at 9-10), but they have offered no evidence in support of that general claim. Instead, they argue that the factual record is not developed enough on "material issues" such as "the

completeness of [OCIC's] accounting," the "necessity of [OCIC's] expenditures," whether OCIC made payments in good faith, and the existence of collateral, among other things. (Second Opp. at 21.) The Nowaks also compile a list of facts provided by OCIC, such as OCIC's good faith and damages, to which they respond that these are factual issues that cannot be resolved at summary judgment. But even to the extent the Nowaks identify specific facts that they assert to be in dispute, they do not provide arguments or evidence showing the existence of any genuine dispute as to OCIC's version of the facts. Here, OCIC has put forward evidence supporting its position as to each element of a breach of contract claim, including a specific damages amount, and those are undisputed in the record because the Nowaks have offered no evidence in response. "A nonmoving party's failure to respond to a Rule 56. 1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009). Accordingly, the Court concludes that there is no genuine dispute as to whether OCIC has satisfied each element of its breach of contract claim.

Instead of identifying contradictory evidence, the Nowaks largely rely on vague suggestions that OCIC's evidence is deficient. The Nowaks argue that OCIC's reliance on a sworn affidavit from an executive is insufficient because "the Court should distinguish between testimony based upon firsthand personal knowledge and testimony based upon review of business records." (Second Opp. at 25.) Even if that is true, the Court finds no reason to find the affidavit not credible as to information gleaned from the affiant's review of business records, and because there is no countervailing evidence in the record, the Court credits all allegations contained in the affidavit.

The Nowaks also seem to suggest that their failure to present evidence is permitted because they filed a "Notice of Equitable Title, Beneficial Interest, Priority of Claim, and

Demand for Disclosure" prior to OCIC's filing of its motion for summary judgment, which "timely presented" "equitable issues" related to identification of assignments and disclosure of the interests upon which OCIC relies. (Second Opp. at 10.) The Notice is not easily parsed, but to the extent it requested "[p]articular identification" of various issues like "assignments of rights" and "indemnity interests" (ECF No. 15 at 3-4), it was not a proper discovery request. In any event, OCIC *has* provided evidence of its interest in this action, as discussed above, and the Nowaks cannot counter that evidence by speculating about the remote possibility of contradictory evidence.

Finally, contrary to the Nowaks' contention, OCIC's requested relief does not "extend[] far beyond the recovery of ordinary contractual damages" such that it can be handled only by a court exercising equitable jurisdiction. (First Opp. at 6.) The Nowaks' reliance on legal jargon related to equity is misplaced. First, the contract at issue, the Indemnification Agreement, itself provides for indemnification, collateral, and attorney's fees. (*See* Agmt. §§ 1, 4-5.) "Actions seeking damages for breach of contract are generally considered to be legal rather than equitable." *McCord as Tr. of Est. of Haniff v. Gov't Emps. Ins. Co.*, No. 22-MC-3611, 2023 WL 4209542, at *6 (E.D.N.Y. June 27, 2023). Second, even to the extent that OCIC requests an equitable remedy through specific performance, *Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 486 (S.D.N.Y. 2022), the Court has jurisdiction to grant such relief, *see Liberty Mut. Ins. Co.*, 2023 WL 5350813, at *5. Indeed, "sureties are ordinarily entitled to specific performance of collateral security clauses because if a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." *Ohio Cas. Ins. Co. v. Fratarcangelo*, 7 F. Supp. 3d 206, 214 (D. Conn. 2014) (quoting *Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) (cleaned up)).

"To obtain specific performance, the requesting party must show: (1) the making of the contract and its terms, including a description of the subject matter; (2) that the party is ready, willing, and able to perform the contract and has fulfilled all of his duties to date; (3) that it is within the opposing party's power to perform; and (4) that there is no adequate remedy at law." *Petrello v. White*, 412 F. Supp. 2d 215, 230 (E.D.N.Y. 2006), *aff'd*, 344 F. App'x 651 (2d Cir. 2009). Substantially for the reasons discussed above, the Indemnity Agreement is a valid contract and there is no dispute as to OCIC's performance under the contract. There is also no indication that the Nowaks are unable to perform, as "Defendants make no argument that they cannot post the requested security, and even if they made such an argument, several courts have upheld collateral security provisions in the face of financial hardship caused to defendants as a result of being required to post collateral security." *Ohio Cas. Ins. Co.*, 7 F. Supp. 3d 206 (collecting cases). Lastly, simply awarding money damages is inadequate. "The rationale behind granting specific performance . . . when the surety is essentially seeking only money damages, is that the surety has specifically bargained for prejudgment collateralization and a judgment for money damages alone would deprive the surety of prejudgment relief to which it is contractually entitled." *Ohio Cas. Ins. Co.*, 7 F. Supp. 3d at 214 (quotation marks omitted). "That result holds as a general matter even where the amount requested approaches or even equals the face value of those claims." *Liberty Mut. Ins. Co.*, 2023 WL 5350813, at *5.

Accordingly, the Court grants OCIC's motion for summary judgment as to its breach of contract claim. "[C]ourts do routinely award damages that are readily calculable based on the undisputed facts on summary judgment," *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 740 (2d Cir. 2010), and here OCIC has provided an undisputed calculation of the losses it incurred as a result of the bond claims (ECF No. 29-6). "The general rule for

measuring damages for breach of contract has long been settled[;] [i]t is the amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." *Cuculich Tr. of Inter Vivos Tr II FBO Cuculich Fam. v. Rigos*, No. 21-CV-6752, 2024 WL 1177914, at *11 (S.D.N.Y. Mar. 19, 2024) (quoting *Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 92 (2d Cir. 1984)). Because the Indemnity Agreement provides for the Indemnitors to be jointly and severally liable for indemnifying OCIC on all bond-related losses, including interest and attorney's fees, the Court grants OCIC's motion for summary judgment in the amount of $3,142,358.00, plus interest, costs, and attorneys' fees associated with this lawsuit, which amount to $14,246.41. (ECF Nos. 29-6, 29-7 ¶ 7.)

The Court dismisses OCIC's claims for unjust enrichment and common law indemnification as duplicative. *See PNC Bank, N.A. v. Wolters Kluwer Fin. Servs., Inc.*, 73 F.Supp.3d 358, 370 (S.D.N.Y. 2014) ("Under New York law, where there is a breach of contract claim and a valid, enforceable contract is found, a court will not recognize separate causes of action for . . . common law indemnity . . . and unjust enrichment.").

**C. Motion to Dismiss**

In light of the Court's obligation to construe pro se pleadings liberally, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), the Court construes the Nowaks' "Notice of Order to Show Cause Why Plaintiff's Claims Should Not be Dismissed" (the "Notice") as a motion to dismiss. The Nowaks' Notice raises the same arguments that they make in opposition to OCIC's motion for summary judgment. (*See generally* ECF No. 37.) Accordingly, OCIC relies on the same arguments that it makes for summary judgment in opposition to the Notice. (ECF No. 38 ¶¶ 3-5.)

The Court denies the motion to dismiss for substantially the reasons that it grants OCIC's motion for summary judgment: The Complaint is sufficient to state a claim on which relief can

be granted, and the Nowaks' purported bases for dismissal, which are the same challenges that it raises in opposition to OCIC's motion for summary judgment, are unavailing.

**D. Motion to Stay**

The Court construes the Nowaks' "Statement of Equitable Controversy and Material Injuries" (the "Statement of Equitable Controversy") as a motion to stay all proceedings. The Nowaks' Statement of Equitable Controversy, while difficult to parse, appears to argue that the Nowaks cannot be liable to OCIC because they have already deposited bonds intended for settlement of this dispute with the Court and that, in any case, OCIC's legal claims cannot be resolved until this Court resolve the Nowaks' "equitable injuries." (*See* ECF No. 48 at 2-3.)

The Court denies the motion to stay as frivolous. Notwithstanding their allegations to the contrary, the Nowaks have not deposited any legal tender with the Court nor posted any bonds that would permit discharge of this lawsuit. (ECF No. 49.) And the Nowaks have not met their burden of establishing the need for a stay. *See U.S. v. Town of Oyster Bay*, 66 F. Supp. 3d 285, 289 (E.D.N.Y. 2014). As before, the Nowaks' reliance on legal jargon related to equity to that end—unmoored from any comprehensible discussion of the private interests of and burdens on both parties, the interests of the courts, the interests of persons not party to this litigation, and the public interest, *see id.*—is misplaced.

**E. Motion for Default Judgment**

Finally, in its default judgment motion against New Style and NSC, OCIC seeks the same $3,142,358 in damages, plus interest, costs, and attorney's fees associated with this lawsuit, which amount to $14,246.41. (ECF No. 27-14 at 2.) Based on OCIC's well-pleaded allegations, and for the reasons discussed as to the Nowaks, New Style's and NSC's liability has been established as a matter of law and default judgment against New Style and NSC is warranted.

## IV. Conclusion

For the foregoing reasons, OCIC's motion for summary judgment against the Nowaks is GRANTED as to the first two counts of its complaint, OCIC's motion for default judgment against New Style and NSC is GRANTED, the Nowaks' motion to dismiss is DENIED, and the Nowaks' motion to stay proceedings is DENIED. OCIC's remaining claims against the Nowaks are hereby DISMISSED.

Plaintiff is awarded damages against Defendants New Style Contractors, Inc., NSC Associates Corp., Artur Nowak, and Barbara Nowak, jointly and severally, in the amount of (1) $3,142,358.00 plus prejudgment interest, accruing from March 13, 2026 through the date of judgment at a rate of $774.83 per diem; and (2) attorney's fees and costs in the amount of $14,246.41.

The Defendants are ORDERED to specifically comply with their obligations under the Indemnity Agreement to post collateral security in the amount of $3,142,358.00.

The Clerk of Court is directed to enter judgment accordingly, to close the motions at Docket Numbers 27 and 29, and to close this case.

SO ORDERED.

Dated: October 29, 2026
New York, New York

J. PAUL OETKEN
United States District Judge